NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

|  |  |
|---|---|
| VAN TASSEL, et al., | : |
| | : |
| Plaintiffs, | : |
| | :     Civil Action No. 16-4761-BRM-TJB |
| v. | : |
| | : |
| OCEAN COUNTY, et al., | :     **OPINION** |
| | : |
| Defendants. | : |

_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Defendants Detective Raymond Gardner ("Det. Gardner") and Detective John Carroll's[1] ("Det. Carroll") (collectively, "Defendants") Motion for Partial Dismissal of Counts Three, Four, Five, Six and Seven of the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] (ECF No. 13.) Plaintiffs Kimberly Van Tassel ("Van Tassel"), Mickey Maldonado ("Maldonado"), and Alejandra Santiago ("Santiago") (collectively, "Plaintiffs") opposed the motion. (ECF No. 15.) For reasons set forth below,

_____

[1] Defendants note that Detective John Carroll was improperly pled as "Detective John Carrol" in Plaintiffs' Complaint. (Defs.' Br. (ECF No. 13) at 1.)

[2] Defendants' Motion is filed on behalf of Det. Carroll, Det. Gardner, and the Ocean County Prosecutor's Office. (*See generally* ECF No. 13.) However, the Ocean County Prosecutor's Office was not a named defendant in this case. Indeed, Plaintiffs concede in their moving brief that "Plaintiffs have not alleged any claims against any prosecutors" and that Plaintiffs have only "alleged claims against detectives." (Pls.' Opp'n Br. (ECF No. 15) at 11.) Plaintiffs note "[t]he facts before the Court . . . reveal that [] Defendants are County employees" and "Defendants are, as their title declares, a County Detective [sic]." (*Id.* at 8 (emphasize removed).) Accordingly, the Court need not address any arguments with respect to dismissal made on behalf of the Ocean County Prosecutor's Office.

Defendants' Motion for Partial Dismissal of Counts Three, Four, Five, Six and Seven is **GRANTED** in part and **DENIED** in part.

## I.   BACKGROUND

For the purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Philips v. Cty. of Allegheny*, 515 F. 3d 224, 228 (3d Cir. 2008). Further, the Court considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

This case arises from an allegedly unlawful search of Plaintiffs' home. On December 29, 2015, Det. Carroll entered Plaintiffs' home, along with six to eight additional law enforcement officers, and began a search of the premises. (Compl. (ECF No. 1) ¶¶ 12-15.) Det. Carroll informed Van Tassel a search warrant had been issued but was unable to present the warrant upon request. (*Id.* ¶¶ 17-18.) Det. Carroll directed an unidentified officer to Van Tassel's bedroom, which was located in the basement. (*Id.* ¶¶ 22-23.) Van Tassel and Det. Carroll followed the unidentified officer, who began searching Van Tassel's bedroom closet. (*Id.* ¶¶ 23-24.) The unidentified officer found a safe in the closet and Det. Carroll ordered Plaintiffs to open it or risk the entire unit being confiscated. (*Id.* ¶¶ 29-30.) Maldonado opened the safe and Det. Carroll instructed Van Tassel to remove everything inside. (*Id.* ¶¶ 31-32.) When Plaintiffs requested to see the search warrant again, Det. Carroll informed them he did not have a copy because it was in the process of being signed. (*Id.* ¶¶ 25-26.) Several times throughout the search, Det. Carroll demanded Plaintiffs leave the premises or face arrest. (*Id.* ¶¶ 21, 27, 28, 33, 34, 38.) Van Tassel gathered some personal belongings before leaving with

her children and Maldonado. (*Id.* ¶¶ 35, 39.) Plaintiffs drove away and checked into a nearby motel. (*Id.* ¶¶ 40-43.)

Thereafter, Plaintiffs received a call from Detective Nate,[3] who requested Plaintiffs return home. (*Id.* ¶¶ 43-44.) Upon arriving home, Plaintiffs found Det. Carroll with the other officers sitting in their vehicles outside and were greeted by Detective Nate inside their home. (*Id.* ¶¶ 45-47.) Detective Nate informed Plaintiffs that the judge would not execute the search warrant and presented Plaintiffs with a "consent to search" form to sign. (*Id.* ¶¶ 48-50.) Plaintiffs declined to sign the consent form and the officers left the premises. (*Id.* ¶¶ 51-52.) The following day, Van Tassel called the detectives' office to reach Det. Carroll and Det. Gardner, allegedly the lead detective on the case. (*Id.* ¶¶ 53, 55.) Det. Carroll informed Van Tassel "that he was very sorry," whereas Det. Gardner took the position "that he had nothing to do with [the incident]." (*Id.* ¶¶ 54-55.) Following the incident, Van Tassel and Maldonado were "shaken" and "forced to miss a number of days of work while they attempted to cope with the horror of being thrown out of their home by armed officers in violation of their rights." (*Id.* ¶ 56.)

On August 4, 2016, Plaintiffs filed this suit against multiple defendants, including against Det. Carroll and Det. Gardner in their individual capacities.[4] Plaintiffs allege the following seven counts: (1) illegal search and seizure, citing 42 U.S.C. § 1983, the Fourth Amendment, the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2, *et. seq.* ("NJCRA"), and the

---

[3] Plaintiffs only identified Detective Nate by his first name. (ECF No. 1 ¶ 43.)

[4] Plaintiffs filed this case against multiple other defendants. (ECF No. 1.) Because this motion only pertains to Det. Carroll and Det. Gardner, the Court need not address the issues of the other defending parties.

New Jersey Constitution (Count One); (2) failure to intervene, citing 42 U.S.C. § 1983, the NJCRA, and the New Jersey Constitution (Count Two); (3) municipal liability under 42 U.S.C. § 1983 and the NJCRA (Count Three); (4) civil conspiracy (Count Four); (5) intentional and negligent infliction of emotional distress (Count Five); (6) respondent superior liability (Count 6); and (7) negligence (Count Seven). (*Id.* ¶¶ 58-91.) Plaintiff seeks compensatory damages, punitive damages, interest, attorney's fees, costs, and injunctive relief.[5] (*Id.* at Prayer for Relief 14.)

On December 12, 2016, Defendants move for partial dismissal of Counts Three, Four, Five, Six and Seven of Plaintiffs' Complaint, arguing: (1) Eleventh Amendment immunity bars Plaintiffs from bringing claims for money damages; (2) Section 1983 and NJCRA claims are barred because Defendants are not "persons" amenable to suit; (3) Plaintiff's municipal liability claims fail because the prosecutor's office is not a local government agency; (4) Plaintiff's tort claims fail because a Notice of Tort Claim was not properly filed; and (5) Counts Four, Five, and Six, which allege, respectively, civil conspiracy, intentional and negligent infliction of emotional distress, and respondent superior liability, fail to state a claim for which relief may

---

[5] Specifically, the injunctive relief Plaintiffs are seeking include "enjoining Ocean County Sheriff's Department and Lakewood Police Department from continuing it pattern and practice of violating citizens' civil rights . . . [and] placement of the Ocean County Sheriff's Department and Lakewood Police Department in receivership for the purpose of instituting programs to train, instruct, discipline, control, and supervise their officers." (ECF No. 1 at 14.) Because this motion only pertains to Det. Carroll and Det. Gardner, the Court need not address this demand for relief.

be granted. (Defs.' Br. (ECF No. 13) at 2, 6-22.) Plaintiffs opposed the motion (ECF No. 15) and Defendants replied (ECF No. 18).[6]

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. PA Tpk. Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir. 1999).

When a defendant moves to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1), the court must determine whether the defendant is making a "facial or factual

---

[6] In a letter submitted to the Court on January 17, 2017, Defendants withdrew their arguments with respect to Plaintiffs' failure to file a Notice of Tort Claim. (ECF No. 19.) Accordingly, the Court decides this Motion on the other arguments submitted by Defendants.

challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Under a facial attack, the movant challenges the legal sufficiency of the claim, and the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891 ("The facial attack does offer similar safeguards to the plaintiff [as a 12(b)(6) motion]: the court must consider the allegations of the complaint as true."). The court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) (citing *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)).

Under a factual attack, however, the challenge is to the trial court's "very power to hear the case." *Mortensen*, 549 F.2d at 891. Thus:

> [T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Mortensen*, 549 F.2d at 891. Moreover, in a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs.*, 220 F.3d at 178. Regardless of the analysis, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009) (citing *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000)).

Here, Defendants raise a facial 12(b)(1) challenge.[7] They do not dispute the facts asserted by Plaintiff, but rather rely on immunity that the claims asserted bar this Court from jurisdiction. *See Blanciak*, 77 F.3d at 694 n.2 (dismissing claims protected by the Eleventh Amendment because immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction."); *Wright v. N.J. Dep't of Educ.*, 115 F. Supp. 3d 490, 496-97 (D.N.J. 2015) (dismissing claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because the plaintiff "has not met his burden of establishing waiver of sovereign immunity"). This "facial" attack limits the Court's review to the pleadings and exhibits attached thereto, and the Court must consider the allegations in the light most favorable to Plaintiff. *Gould Elecs.*, 220 F.3d at 176; *Mortensen*, 549 F.2d at 891. Plaintiff bears the burden of proving subject matter jurisdiction, *McCann*, 458 F.3d at 286; *Lightfoot*, 564 F.3d at 627, and the Court must dismiss the complaint if it appears to a certainty Plaintiff cannot demonstrate a colorable claim of jurisdiction, *D.G.*, 559 F. Supp. 2d at 491.

**B.      Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations."

---

[7] Although Defendants only raise a Rule 12(b)(6) motion to dismiss for failure to state a claim, part of their arguments fall under the legal standard of a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See Blanciak*, 77 F.3d at 693 n.2. The Third Circuit has "cautioned against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and reaching the merits of the claims." *Gould*¸ 220 F.3d at 178. Therefore, the Court clarifies that its ruling in this Opinion is made in part pursuant to Rule 12(b)(1).

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.    DECISION

### A.    Subject-Matter Jurisdiction Over Defendants In Their Individual Capacity

####    1.    Federal Constitutional Claims

Defendants argue claims for damages are barred because Eleventh Amendment immunity prohibits claims against state officials and therefore Defendants, in their official capacities, are not "persons" amenable to suit under Section 1983. (ECF No. 13 at 6, 10.) Specifically, Defendants argue:

> Although Plaintiffs have alleged their claims against the Detectives in their individual capacities, Plaintiffs have not explained how the actions complained of fall outside of their job duties. Therefore, in the event that the Court may construe claims against the Detectives in their official capacities, those claims must be disregarded based on Eleventh Amendment Immunity.

(*Id*. at 6.) Defendants also argue the many allegations against them in their individual capacity "can only be construed against them in their official capacities, and therefore the 'not a person' analysis [under Section 1983] applies to those claims . . . in their official capacities." (*Id.* at 10.) Plaintiffs argue Eleventh Amendment immunity does not apply, and Defendants are "persons" amenable to suit under Section 1983. (Pls.' Opp'n Br. (ECF No. 15) at 4-5.) Specifically, Plaintiffs argue the "well-plead complaint clearly states that the claims against [] Defendants are in their individual capacities." (*Id.* at 5.)

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must establish that (1) the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) the conduct challenged was committed by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State. . . . The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Generally, a suit by private parties seeking to impose a liability, which must be paid from public funds in a state treasury, is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state or by a federal statute. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment also bars suits against state officials in their official capacity. *See Melo v. Hafer (Melo I)*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, *Hafer v. Melo (Melo II)* 502 U.S. 21 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-68 (1985)). The Eleventh Amendment does not, however, bar suits for damages against state officials in their individual or personal capacity, as such actions seek recovery against the personal assets of the defendant and the state is not the real party in interest. *Melo I*, 912 F.2d at 635 (citation omitted). In addition, the Eleventh Amendment does not bar suits against state officials for declaratory or injunctive relief. *See Melo I*, 912 F.2d at 635 n.5 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Here, Plaintiffs seek damages against Defendants in their individual capacities. (ECF No. 1 at 14.) Specifically, Plaintiffs' suit "seek[s] to impose individual liability upon a government officer for action taken under color of state law." *Melo II*, 502 U.S. at 25. Because

the Eleventh Amendment only bars suits against state officials in their official capacities, Plaintiffs are entitled to proceed against Defendants in their individual capacities. *Garden State Elec. Inspection Servs., Inc. v. Levin* 144 F. App'x 247, 251 (3d Cir. 2005) (finding Eleventh Amendment immunity does not bar a plaintiff from bringing suit in federal court against government officials sued in their individual capacity); *Goodall-Gaillard v. N.J. Dep't of Corr.*, No. 09-965, 2014 WL 2872086, at *26 (D.N.J. June 24, 2014); *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 281 (D.N.J. 2013) (finding a state official sued in his individual capacity "does not partake [in] the state's Eleventh Amendment sovereign immunity"); *Kamienski v. Att'y Gen. for N.J.*, No. 11-3056, 2012 WL 4033765, at *4 (D.N.J. Sept. 12, 2012) ("The Eleventh Amendment does not preclude suit against private individuals.").

To the extent Defendants argue Plaintiffs' "allegations [against them in their individual capacity] can only be construed against them in their official capacities" (ECF No. 13 at 10), Defendants fail to cite any case law to support this contention. On the contrary, state officials are not "absolutely immune from personal liability under [Section] 1983 solely by virtue of their official nature of their acts." *Melo II*, 502 U.S. at 31; *Pitman v. Ottehberg*, No. 10-2538, 2015 WL 179392, at *7 (D.N.J. Jan. 14, 2015) ("Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the conduct at issue was part of the defendant's official duties."). Here, Plaintiffs specifically bring claims against Defendants solely in their individual capacities, and Defendants cannot construe Plaintiffs' allegations to suggest the Complaint is asserting different claims, particularly ones conveniently precluded by the Eleventh Amendment. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398 (1987) ("[P]laintiff is the master of the complaint . . . .");

Accordingly, Defendants are "persons" amenable to suit under Section 1983 because Eleventh Amendment immunity does not extend to claims brought against state officials in their individual capacities. *See Melo II*, 502 U.S. 21, 31 (1991) ("[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of [Section] 1983 . . . ."); *Michel v. Wicke*, No. 10-3892, 2011 WL 3163236, at *4 (D.N.J. July 25, 2011) ("Because [the defendant] is sued in his individual capacity, he is a person under [Section] 1983 . . . ."). Defendant's Motion to Dismiss claims against them on jurisdictional grounds is **DENIED**.

2. State Constitutional Claims

Defendants argue sovereign immunity bars Plaintiffs from asserting state constitutional claims because Defendants are not "persons" amenable to suit under the NJCRA. (ECF No. 13 at 13.) The NJCRA was modeled after Section 1983 and "courts in New Jersey have consistently looked at claims under the NJCRA 'through the lens of [Section] 1983,'" thereby construing the NJCRA in terms similar to its federal counterpart. *Samoles v. Lacey Twp.*, No. 12-3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (citation omitted); *Hartfeld v. N.J. State Police*, No. 16-5461, 2017 WL 3184173, at *5 (D.N.J. July 26, 2017); *Armstrong v. Sherman*, No. 09-716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010). This Court has repeatedly interpreted the NJCRA analogously to Section 1983. *See Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart . . . ."). The NJCRA is therefore generally interpreted nearly identically to Section 1983 and claims under the NJCRA are generally coterminous with and subject to the same defenses and immunities as those brought under Section 1983. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011).

Accordingly, the Court will analyze Plaintiffs' NJCRA claims through the lens of Section 1983. *Middleton v. City of Ocean City*, No. 12-0605, 2014 WL 2931046, at *6 (D.N.J. June 30, 2014) (noting New Jersey courts apply virtually the same standard under state law for malicious prosecution claims); *see also Norcross v. Town of Hammonton*, No. 04-2536, 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008) ("The New Jersey Supreme Court does not appear to have spoken on whether excessive force is a context where state law provides greater protection than does federal law. This [c]ourt sees no reason to conclude that in the context of a claim for excessive force during an arrest, the standard under the New Jersey Constitution for evaluating those claims is different from that under the United States Constitution.").

For the reasons set forth in connection with the Section 1983 analyses above, Defendants, in their individual capacities, are amenable to suit under the NJCRA and New Jersey Constitution, and Defendant's Motion to Dismiss claims against them on jurisdictional grounds is **DENIED**.

### B. Failure To State A Claim

Having found this Court has jurisdiction over Defendants in their individual capacity, the Court proceeds to its analysis of Defendants' 12(b)(6) Motion to Dismiss certain counts. To the extent Defendants seek dismissal of Counts III and VI, the Court **DENIES** Defendants' Motion because Counts III and VI make allegations against non-moving defendants.[8] Additionally, Defendants move generally to dismiss Count VII, but failure to provide this Court

---

[8] Defendants argue Count VI, which alleges a cause of action for *respondeat superior*, should be dismissed as to the Prosecutor's Office. The Court has already found the Prosecutor's Office is not a party to this action and therefore, the Court will not address Defendants' arguments as to Count VI.

with any basis for the dismissal. Therefore, Defendants' Motion to Dismiss Count VII is also

**DENIED.** Defendants move to dismiss Counts IV and V for failure to state a claim, which

Court addresses below.

1. <u>Civil Conspiracy – Count IV[9]</u>

Defendants argue Count Four for civil conspiracy should be dismissed for failure to

state a claim. (ECF No. 13 at 20.) Specifically, Defendants argue "Plaintiffs have not identified

an unlawful agreement between any parties, nor what they purpose that agreement to have been

or what form it took." (*Id.* at 20-21.) In opposition, Plaintiff argues the Complaint sufficiently

alleges a claim for civil conspiracy because:

> [T]he Complaint details the unlawful actions of Defendants
> Gardner and Carrol[l] in lying about having a warrant and
> entering Plaintiffs' home with several of the other Defendants.
> . . . The Complaint further reveals how [] Defendants directed
> other Defendants to various places within the home to engage in
> an illegal search, seizure, and eviction of [] Plaintiffs . . . The
> voluminous facts contained in the Complaint make it clear that []
> Defendants acted in concert and together, in an agreement to
> deprive [] Plaintiffs of their rights.

(ECF No. 15 at 10.)

Under New Jersey law, a plaintiff alleging civil conspiracy must prove "a combination

of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act

by unlawful means, the principal element of which is an agreement between the parties to inflict

a wrong against or injury upon another, and an overt act that results in damages." *Banco*

*Popular, N.A. v. Gandi*, 184 N.J. 161, 177 (2005) (citation omitted). To survive a motion to

---

[9] As an initial matter, the Court notes Plaintiffs have not cited to any case law to support their claims for civil conspiracy or intentional and negligent infliction of emotional distress in their opposition brief.

dismiss, a plaintiff must allege "at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn." *Durham v. City and Cty. of Erie*, 171 F. App'x 412, 415 (3d Cir. 2006). "This requirement is established where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and people responsible." *Lynn v. Christner*, 184 F. App'x 180, 184 (3d Cir. 2006).

Here, Plaintiffs allege "[Det. Carroll] was working under the direct supervision of and in concert with [Det. Gardner], from his office," to execute a search of their home in the middle of the night. (ECF No. ¶¶ 16, 17, 49) Plaintiff claims, "upon information and belief, [Det. Gardner was] the lead detective on the matter." (*Id.* ¶ 55.) Further, Plaintiffs allege "Defendants knew that no warrant had issued to search the home and yet [still] searched the home." (*Id.* ¶ 57.) *See Morgan v. Union Cty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 365 (App. Div. 1993) ("Thus, the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can 'infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding' to achieve the conspiracy's objectives." (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

At this stage of the proceedings, these allegations are sufficient to support a claim that Defendants acted in concert to commit an unlawful act, i.e., to violate Plaintiffs' rights against warrantless searches and seizures. *See Ferrara v. Union Cty. Prob.*, No. 16-9250, 2017 WL 1100567, at *4 (D.N.J. Mar. 22, 2017) (finding a civil conspiracy claim was adequately pled because "[p]laintiff has alleged that at least two [i]ndividual [d]efendants . . . knew that [the plaintiff] did not violate probation, or that the assertion that he violated his probation was frivolous, but acted in concert to harass him and deprive him of his freedom and civil liberties");

*Gibbs. v. Massey*, No. 07-3604, 2009 WL 838183, at *10 (D.N.J. Mar. 26, 2009) ("The keystone to a civil conspiracy claim is *not* the actual agreement; it is the underlying wrong which, absent the agreement, would by itself give rise to a cause of action." (citing *Gandi*, 184 N.J. at 177-78)). Accordingly, Defendants' Motion to Dismiss Plaintiffs' civil conspiracy claim is **DENIED.**

2.      Infliction of Emotional Distress – Count V

Defendants argue Count Five for negligent and intentional infliction of emotional distress should be dismissed for failure to state a claim. (ECF No. 13 at 17.) Specifically, Defendants advance two arguments. First, they argue Plaintiffs have failed to sufficiently plead "extreme/outrageous and intentional/reckless conduct that [] causes severe emotional distress" to bring an intentional infliction of emotional distress claim. (*Id.*) Second, they argue Plaintiffs have failed to sufficiently plead the heightened requirement for negligent infliction of emotional distress and "merely pled the elements . . . without further supporting allegations." (*Id.* at 19.) In response, Plaintiffs contend they:

> more than adequately plead the horrific circumstances in which [Plaintiffs] were accosted in their home by [] Defendants, threatened with arrest, forced to permit an unlawful search, then unlawfully evicted from their home in the middle of the night, not even given the opportunity to put shoes on their children. Throughout this outrageous conduct, [] Defendants continued to threaten, coerce, and harass [] Plaintiffs. . . . Indeed, [] Defendants' actions were so traumatic, Plaintiffs had to pull over after being evicted to mentally and emotionally collect themselves.

(ECF No. 15.) The Court will address both arguments in turn.

a.      *Intentional Infliction of Emotional Distress*

Under New Jersey law, to establish a *prima facie* claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Savs. Fund Soc'y*, 111 N.J. 355, 366 (1988)). "An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006). However, a plaintiff will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair and unkind." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991).

In order to establish "extreme and outrageous" conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon*, 173 F. Supp. 2d at 242 (quoting *Buckley*, 544 N.J. at 366 (citation omitted)). As a threshold matter, the Court must determine whether a defendant's conduct meets this standard. *See Ali v. Jersey City Parking Authority*, No. 13-2678, 2014 WL 1494578, at *5 (D.N.J. Apr. 16 2014) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). In order to establish severe emotional distress, a plaintiff must show emotional distress "so severe that no reasonable [person] could be expected to endure it." *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1113 (D.N.J. 1991) (quoting *Buckley*, 111 N.J. at 366). Additionally, "New Jersey law . . . requires plaintiffs to assert that they sought treatment for their alleged distress." *Botts v. N.Y. Times Co.*, No. 03-1582, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003).

Here, Plaintiffs allege they were "unlawfully evicted from their home in the middle of the night so their home could be unlawfully searched." (ECF No. 1 ¶ 49.) While there are no factual allegations made on behalf of Santiago in the entire Complaint, Plaintiffs claim "Van Tassel and Maldonado had to stop in a nearby parking lot to collect themselves emotionally as they were distraught over the situation." (ECF No. 1 ¶ 41.) Plaintiffs also claim "Van Tassel and Maldonado, still shaken, were forced to miss a number of days of work while they attempted to cope with the horror of being thrown out of their home." (*Id.* ¶ 56.) The only remaining references to Plaintiffs' alleged emotional distress are:

> The previously described misconduct caused and/or resulted in emotional distress that reasonable person could [not] [sic] be expected to endure it. Specifically, Defendants' collective conduct resulting in emotional tumult that cause the adult Plaintiffs to miss time from work as they recovered. As a direct and proximate result of the misconduct, Plaintiffs all were caused to suffer physical and emotional harm.

(*Id.* ¶¶ 83-85.) These allegations, even if true, fail to sufficiently state a claim, because Plaintiffs merely rely on a recitation of the elements supported with conclusory statements. *See Iqbal*, 556 U.S. at 678 (holding "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim); *Birch v. Wal-Mart Stores*, No. 15-1296, 2015 WL 8490938, at *4 (D.N.J. Dec. 9, 2015) ("While the Complaint uses terms like 'outrageous' and 'severe emotional distress,' these legal conclusions are not supported by facts."); *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000) (dismissing an

intentional infliction of emotional distress claim because the plaintiff "does not allege the symptoms of severe emotional distress").[10]

Moreover, neither Van Tassel nor Maldonado have alleged suffering from a medical condition or even sought medical assistance for their alleged distress. *See Botts*, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003) (granting 12(b)(6) motion to dismiss because plaintiffs "have not alleged that they have sought medical treatment for their distress"); *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 385 (D.N.J. 1999) (granting 12(b)(6) motion to dismiss, noting the plaintiff had "not alleged that she had to seek medical assistance, or that any specific ailment afflicted her"); *Rivera*, 2003 WL 21077965, at *6 (distinguishing facts from *Mardini* and denying 12(b)(6) motion to dismiss because the plaintiff alleged "emotional stress and anxiety, which intensified her medical condition").[11] Accordingly, Defendants' Motion to Dismiss Plaintiffs' intentional infliction of emotional distress claim is **GRANTED.**

### b. <u>Negligent Infliction of Emotional Distress</u>

Under New Jersey law, there are two legal theories under which a plaintiff can establish a *prima facie* claim for negligent infliction of emotional distress. First, a plaintiff can show: 1) "death or serious physical injury of another caused by defendant's negligence; 2) a marital or

_____

[10] With respect to Plaintiffs' claim they "were humiliated, disgraced, suffered damages to their reputation" (ECF No. 1 ¶ 63), it is well established suffered from "aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" does not sufficiently show severe emotional distress as a matter of law. *Buckley*, 111 N.J. at 366. Therefore, Plaintiffs' allegations, taken as true, fail to state a claim for emotional distress.

[11] *See also, Flammer v. Cty. of Morris*, No. 05-5039, 2006 WL 1307679, at *4 (D.N.J. May 10, 2006) (denying a motion to dismiss, noting the plaintiff alleged "that [the defendant's] conduct caused him to seek medical attention and resulted in him being prescribed medication for anxiety"); *Maxon v. YRC Inc.*, No. 14-4653, 2015 WL 4394272, at *6-7 (D.N.J. July 6, 2015) (denying 12(b)(6) motion to dismiss, noting the plaintiff alleged suffering from stress, anxiety, recurring nightmares, had a heart attack, and underwent psychological counseling).

intimate family relationship between plaintiff and the injured person; 3) observation of the death or injury at the scene of the accident; and 4) resulting severe emotional distress." *Fleming v. United Parcel Serv., Inc.*, 255 N.J. Super. 108, 166 (Law. Div. 1992). Second, a plaintiff can show "the defendant's negligent conduct placed the plaintiff in 'reasonable fear of immediate personal injury' which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther*, 195 N.J. 91, 103 (2008). Under the second standard, New Jersey law has adopted the "zone of danger" rule, where "immediate fear of personal injury could serve as the basis for recovery so long as 'substantial bodily injury or sickness' result." *Abouzaid v. Mansard Gardens Ass'n, LLC.*, 207 N.J. 67, 77 (2011).

Here, Plaintiffs fail to allege facts supporting the former legal theory because there are no references to "death or serious physical injury." *Portee v. Jaffee*, 84 N.J. 88, 97 (1980); *see also Angle v. United States*, No. 12-2495, 2012 WL 6708165, at *6-7 (D.N.J. Dec. 21, 2012). Likewise, Plaintiffs fail to state a claim under the latter legal theory because the Complaint contains no factual allegations to establish whether Defendants' conduct placed Plaintiffs in a zone of danger. *See K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, No. 14-145, 2015 WL 1816353, at *11 (D.N.J. Apr. 21, 2015) ("Plaintiff's [first amended complaint] contains no factual allegations to establish that any Plaintiff was placed in a zone of danger by Defendants' allegedly negligent conduct . . . .").

To the extent Plaintiffs claim they were "fearing arrest" or "still shock" (ECF No. 1 ¶¶ 39, 56), "where fright does not cause substantial bodily injury or sickness, it is to be regarded as too lacking in seriousness and too speculative to warrant the imposition of liability." *Falzone v. Busch*, 45 N.J. 559, 5569 (1965); *see also Peteete v. Asbury Park Police Dep't*, No. 09-1220, 2010 WL 5151238, at *14 (D.N.J. Dec. 13, 2010) (granting 12(b)(6) motion to dismiss because

plaintiff's allegations of "humiliation, mental anguish, and emotional distress [were] insufficient as a matter of law to support a finding of severe mental distress"). Because the Complaint does not allege Plaintiffs witnessed the death of or serious injury to a close family member, or were placed in reasonable fear of immediate personal injury, Plaintiffs fail to state a claim for negligent infliction of emotional distress. Accordingly, Defendants' motion to dismiss Count V is **GRANTED.**

### IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Dismissal (ECF No. 13) of the claims against Det. Carroll and Det. Gardner is **DENIED** with respect to Counts III, IV, VI, and VII, and **GRANTED** with respect to Count V. An appropriate order will follow.


**Date:** November 17, 2017                              */s/ Brian R. Martinotti*
                                                         **HON. BRIAN R. MARTINOTTI**
                                                         **UNITED STATES DISTRICT JUDGE**